No. 23,206.

Freeman L. Martin, *Appellee*, v. T. W. Bell, *Appellant*.

SYLLABUS BY THE COURT.

1. Contract—*To Pay for Procuring Signer to Bail Bond—Evidence Supports the Agreement.* The evidence is held to support a finding that an attorney made himself primarily liable to pay for services rendered in procuring at his request a signer to a bail bond for the release of his client from custody.

2. Same—*No Error in Rulings on Instructions.* It is held that no prejudicial error was committed in the giving and refusal of instructions.

3. Same—*Findings Not Inconsistent.* A special finding is held not to be inconsistent with the general verdict or with other findings.

Appeal from Sedgwick district court, division No. 2; Thornton W. Sargent, judge. Opinion filed January 7, 1922. Affirmed.

*Elisha Scott,* and *R. M. Van Dyne,* both of Topeka, for the appellant.

*Freeman L. Martin, J. H. Roberts,* and *George B. Jones,* all of St. Louis, Mo., for the appellee.

The opinion of the court was delivered by

Mason, J.: Freeman L. Martin sued T. W. Bell, alleging an oral contract to pay for services rendered. The plaintiff recovered judgment and the defendant appeals.

1. Both parties are lawyers. The plaintiff testified that the defendant came to him and offered to pay him $300 if he would find some responsible person who would sign a bail bond to procure the release from custody of a client of the defendant who was under arrest on a criminal.charge, and that he accepted the proposition and found such a bondsman. The defendant testified that he obtained the bondsman through another channel entirely; that the plaintiff had nothing to do with it; and that no such conversation as that narrated by the plaintiff had ever taken place. These disputed

questions of fact having been settled against the defendant by the jury he now contends that even accepting the plaintiff's version of the affair the judgment was wrong because the admitted facts show that if he promised to pay the plaintiff the $300 the promise was unenforcible under the statute of frauds because it was one to pay the debt of another, and was not in writing—that the primary obligation to pay the money rested upon the defendant's client, and the defendant was a mere guarantor. A number of circumstances tended to support this theory, but we do not regard any one of them, or all of them together, as sufficient to establish it beyond controversy, or prevent the question whether the defendant's obligation was primary or secondary from going to the jury as one of fact. The plaintiff testified that the defendant said to him—"If you can get me a man who can sign that bond . . . I will give you three hundred dollars;" that after the plaintiff had agreed to do so the defendant said, "I will send you most of this money as soon as I go back to Leavenworth, Kansas, but . . . within thirty days I will send you the balance," adding that it would take a little time for his client to raise the money. The plaintiff's testimony on this phase of the matter concluded with the words, " 'but I will guarantee,' he says, 'I will pay the money myself.' " The suggestion that at least a part of the money was to be obtained from the client, coupled with the use of the word "guarantee" had some tendency to support the view that the original obligation was on the client, the defendant only promising to pay if his client did not. But the character in this regard of the agreement that was reached was to be determined from all the evidence. The court properly instructed the jury that the use of the word "guarantee" was not conclusive against the plaintiff's theory—that the context might show it was not used in its technical sense. (*Ezell v. Butcher,* 104 Kan. 465, 179 Pac. 332.)

Several months after the making of the agreement the plaintiff wrote a letter to the defendant in which he said:

"W. W. H. Grant [the bondsman referred to, who it appears was to receive a part of the money] has just left my office in a very angry mood; he says that he is through with me and that he will be there to see you in person and find out why the money is not forthcoming. He thinks that you might have sent a check and charged the same to your client as you know him better than we. I know you have been away all summer in Muskogee but your client knew this was due and could have made arrangements to take care of this notwithstanding your absence from Leavenworth."

This language is not necessarily inconsistent with a direct promise

by the defendant to pay the $300 himself. That the expense would ultimately fall upon the client was quite a matter of course, and the fact that it was the expectation of the parties that the defendant should get from his client the money to make the payment does not conclusively show that he did not intend to make himself primarily liable.

2. The defendant complains of the refusal of the court to give an instruction to the effect that if at the time of the making of the alleged agreement he was acting as the agent and attorney of his client, and that the plaintiff knew of such relationship, the defendant would not be liable unless he had expressly agreed to bind himself. The plaintiff's testimony was that the defendant did expressly agree to make the payment himself, and the jury in answer to a special question found in accordance with the testimony that "Mr. Bell agreed to pay F. L. Martin $300.00 for his services if he would secure a bondsman who could qualify on bonds for release of Charles Stevens from jail." This amounted to a specific finding that the defendant expressly agreed to bind himself; and it is obvious that if the instruction refused had been given it could not have affected the result. Complaint is also made of the giving of an instruction to the effect that the defendant's client, Stevens, would not be bound to pay the plaintiff $300 unless the defendant as his attorney made such a contract in his name, using words which would bind Stevens, in which case the defendant would not be personally liable. The instruction appears to be substantially correct but in any event the finding already referred to settled in favor of the plaintiff the issue of fact on which the case turned.

3. In answer to the question "State what was to be paid for furnishing this bond?" the jury answered "Nothing at this time." The defendant argues that this is inconsistent with the other findings and the general verdict. The question followed one calling for the date on which the agreement was made, and it is obvious that by "at this time" the jury meant at the time the contract was entered into. Therefore the conflict referred to did not exist.

The judgment is affirmed.

JOHNSTON, C. J. (dissenting): I dissent on the ground that the testimony shows that the obligation was that of defendant's client, and that the plaintiff in his letter expressly recognized that the amount promised to be paid for procuring a bond for the client was the client's debt, and not that of his attorney.